UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THANH NAM LE,                                    *
                                                 *
        Petitioner,                              *
                                                 *
        v.                                       *
                                                 *        Civil Action No. 1:26-cv-12801-IT
ANTONE MONIZ, Superintendent, Plymouth           *
County Correctional Facility, et al.,            *
                                                 *
        Respondents.                             *
                                                 *

MEMORANDUM & ORDER

July 13, 2026

TALWANI, D.J.

Pending before the court is Petitioner Thanh Nam Le's [Second] Petition for Writ of

Habeas Corpus [Doc. No. 1] ("Second Petition"). For the reasons set forth below, the Second

Petition [Doc. No. 1] is DENIED.

I.      Background

On May 7, 2026, Petitioner, a citizen of Vietnam, was arrested by local police in Epping,

New Hampshire, on behalf of U.S. Immigration and Customs Enforcement ("ICE"). Pet. Ex. 4,

at 1–2 [Doc. No. 1-4]. He is presently in ICE custody at the Plymouth County Correctional

Facility in Plymouth, Massachusetts. Pet. ¶ 7 [Doc. No. 1].

On May 13, 2026, Petitioner sought habeas relief from this court, arguing that he was

entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a). Pet. for Writ of Habeas Corpus ¶¶ 12–

15, Le v. Moniz, No. 1:26-cv-12166-IT (D. Mass. May 13, 2026), Dkt. No. 1. Respondents

acknowledged that Petitioner was detained under 8 U.S.C. § 1226(a) and was therefore eligible

for a bond hearing. Resp. to Habeas Pet. 1, Le v. Moniz, No. 1:26-cv-12166-IT (D. Mass. May

18, 2026), Dkt. No. 6. With both parties in agreement, the court ordered Respondents to "either release Petitioner or provide him a constitutionally-adequate bond hearing pursuant to 8 U.S.C. § 1226(a) and Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021)" by no later than June 9, 2026. Mem. & Order 2, Le v. Moniz, No. 1:26-cv-12166-IT (D. Mass. June 2, 2026), Dkt. No. 10.

Respondents filed a status report on June 16, 2026, in which they relayed that Petitioner received a bond hearing on June 8, 2026 (the "bond hearing"), but was denied bond because "the Immigration Judge . . . found [Petitioner] to be a flight risk by a preponderance of the evidence and there is no bond amount or alternative to detention that would ameliorate his risk of flight." Status Report 1, Le v. Moniz, No. 1:26-cv-12166-IT (D. Mass. June 2, 2026), Dkt. No. 11.[1]

On June 18, 2026, Petitioner filed the Second Petition [Doc. No. 1], in which he seeks either immediate release or for this court to hold a bond hearing. Id. at 24 ¶¶ 8–9. As grounds, Petitioner asserts that the bond hearing conducted by the Immigration Judge was "fundamentally unfair, constitutionally and statutorily deficient" and that "as a matter of law, the evidence could not support [the Immigration Judge's] finding." Id. at 13 ¶ 52.

---

[1] At the bond hearing, counsel for the U.S. Department of Homeland Security ("DHS") made no claim that Petitioner posed a danger to the community. See Pet. Ex. 3, at ECF 2 [Doc. No. 1-5] ("Unofficial Transcript"). The parties have not submitted a written memorandum of decision by the Immigration Judge, with Respondents explaining that, until a petitioner appeals a BIA decision, a written memorandum of decision is not typically issued. See Opp'n 9 [Doc. No. 6]; see also Centro Legal de la Raza v. Exec. Off. for Immigr. Rev., 524 F. Supp. 3d 919, 930–31 (N.D. Cal. 2021) (observing that "parties and their counsel can wait weeks, months, or over a year between the time of the [Immigration Judge's] decision and when they receive" the official transcript of bond proceedings). Where Petitioner has submitted an unofficial transcript of the bond proceedings, and where Respondents have not objected to, or disputed the accuracy of, the Petitioner's submission, the court considers this unofficial transcript to be an accurate recitation of the bond hearing.

Respondents oppose the Second Petition [Doc. No. 1], arguing that (1) although Petitioner characterizes the Second Petition [Doc. No. 1] as a permissible challenge under Hernandez-Lara, Petitioner is instead seeking for this court to "reweigh the evidence presented in Immigration Court and overturn the [Immigration Judge's] denial of bond[,]" despite the statutory bar on doing so under 8 U.S.C. § 1226(e), Opp'n 6 [Doc. No. 6]; and (2) the Second Petition [Doc. No. 1] is not properly before the court where Petitioner has failed to exhaust his administrative remedies, see Opp'n 11–13 [Doc. No. 6].

On July 2, 2026, Petitioner filed a Status Report [Doc. No. 8], in which he informed the court that he has filed an appeal of the Immigration Judge's denial of bond with the Board of Immigration Appeals ("BIA"). Id. ¶ 1.

## II.    Discussion

The court addresses Respondents' arguments in reverse order.

### A.  *Administrative Exhaustion*

"There are two species of exhaustion: statutory and common-law." Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021). Statutory exhaustion "deprives a federal court of jurisdiction," whereas common-law exhaustion "cedes discretion to a [federal] court to decline the exercise of jurisdiction." Id. (alteration in original) (quoting Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 174 (1st Cir. 2016)). "In other words, 'exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress'" while courts retain "more latitude in dealing with exhaustion questions when Congress has remained silent." Id. (quoting Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997)).

As Petitioner asserts, see Pet. 8 ¶¶ 35–37 [Doc. No. 1], and Respondents acknowledge, see Opp'n 12 [Doc. No. 6], exhaustion is not required by statute in this circumstance.

Accordingly, the court will evaluate Respondents' argument under the "more permissive" common-law exhaustion standard. Brito, 22 F.4th at 256; see Gomes v. Hyde, 804 F. Supp. 3d 265, 272, 277 (D. Mass. 2025).

Under the common-law standard, the court may decline to require exhaustion in "circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." Portela-Gonzalez, 109 F.3d at 77 (quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992)). As relevant here, "a court may consider relaxing the [exhaustion requirement] when unreasonable or indefinite delay threatens unduly to prejudice the subsequent bringing of a judicial action." Id. "If the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,' exhaustion may be excused even though 'the administrative decisionmaking schedule is otherwise reasonable and definite.'" Id. (quoting McCarthy, 503 U.S. at 147). A court need not require exhaustion where a petitioner is "challenging . . . incarceration . . . or the ongoing deprivation of some other liberty interest." Brito, 22 F.4th at 256 (second alteration in original) (quoting Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)).

Petitioner has been detained by Respondents since May 7, 2026. Pet. Ex. 4, at 1–2 [Doc. No. 1-4]. As Petitioner asserts, see Pet. 9 ¶¶ 39–41, 11 ¶ 45 [Doc. No. 1], and, as other sessions of this court have found, the processing time for bond appeals before the BIA can be significant. See, e.g., Gomes, 804 F. Supp. 3d at 272 (noting that, according to data released by the Executive Office for Immigration Review, the average processing time for bond appeals exceeded 200 days in 2024). Assuming the BIA is continuing to process appeals at a similar rate, Petitioner could remain detained for many more months while awaiting adjudication of his newly-filed appeal. The court thus finds that, in this instance, Petitioner's interests "weigh

heavily against requiring administrative exhaustion" and therefore declines to impose such a requirement. See McCarthy, 503 U.S. at 146; Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) (stating that the "loss of liberty is a . . . severe form of irreparable injury").

B. *Adequacy of the Bond Hearing*

With respect to his bond hearing, Petitioner argues that he was not provided the "constitutionally-adequate bond hearing pursuant to Hernandez-Lara" ordered by this court. Pet. 12 ¶ 46–15 ¶ 59 [Doc. No. 1]; see Mem. & Order 2, Le v. Moniz, No. 1:26-cv-12166-IT (D. Mass. June 2, 2026), Dkt. No. 10. Respondents maintain that Petitioner is simply asking this court to reweigh the evidence before the Immigration Judge, in contravention of 8 U.S.C. § 1226(e). Opp'n 9–11 [Doc. No. 6].

Due process requires that Respondents prove Petitioner's "flight risk by a preponderance of the evidence" during a custody redetermination hearing. Hernandez-Lara, 10 F.4th at 46. "To show that an immigration judge failed to apply the correct standard, [Petitioner] must either 'point to the language of the immigration judge's opinion or demonstrate that the evidence itself could not—as a matter of law—have supported the immigration judge's decision to deny bond.'" Hernandez-Azuaje v. Hyde, 2026 WL 221833, No. 25-CV-13224-ADB, at *1 (D. Mass. Jan. 28, 2026) (quoting Diaz Ortiz, 384 F. Supp. 3d 140, 143 (D. Mass. 2019) (internal quotations omitted)).

At the bond hearing, counsel for the U.S. Department of Homeland Security ("DHS") detailed Petitioner's legal status in the United States, starting with his entry in 2019 as a "J-1 exchange visitor[,]" his adjustment to "B-2" status thereafter, his second adjustment to "F-1 student in July of 2022[,]" and his absence of legal status since Petitioner's "school had terminated his F-1 status" as of October 18, 2024, "for failure to attend school[.]" Unofficial

Trans. ECF 2 [Doc. No. 1-5]. DHS counsel noted further that, until Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal ("Form I-589") on the morning of the bond hearing, Petitioner "had made no attempts to regularize his status[.]" Id.; see Pet. Ex. 4, at ECF 1–2 [Doc. No. 1-4] ("Form I-213"). DHS counsel opined that Petitioner's Form I-589 was "speculative at best" where the application appeared "to be based on familial and gang issues" and where Petitioner has no marital or familial ties to the United States. Unofficial Trans. ECF 2 [Doc. No. 1-5].

Petitioner's counsel argued, inter alia, that bond should be granted where Petitioner had a "fixed address" at an apartment shared with a roommate; a seven-year residential history in the country; "strong family and community ties[,]" including Petitioner's girlfriend of six years; positive community involvement; lack of criminal history; and pending Form I-589. Id. at ECF 3. In response to DHS's argument that Petitioner's likelihood of success with his Form I-589 was speculative, counsel asserted that there was "absolutely no evidence as to the [Form I-589] being late or being speculative" and, in any event, the Immigration Court was not permitted under DHS policy to consider documentation in Petitioner's "removal file[.]" Id.

The Immigration Judge was also in receipt of Petitioner's evidentiary submissions: an affidavit from a "[United States Citizen] sponsor"; a copy of Petitioner's visa and Vietnamese passport; a residential lease for an apartment in New Hampshire between Petitioner's roommate and the apartment's landlord; two utility bills in Petitioner's roommate's name, with the mailing address of one bill listing both Petitioner and his roommate; a letter of support from Petitioner's girlfriend; and a "character letter of support" from Petitioner's friend. See Pet. Ex. 4, at ECF 2–39 [Doc. No. 1-6].

At the conclusion of the bond hearing, the Immigration Judge found that DHS sufficiently demonstrated Petitioner's flight risk and denied bond on that basis. Id. at ECF 3. The Immigration Judge explained her decision as follows:

> The [Petitioner] submitted a letter from a sponsor who belongs to a nonprofit organization who is going to serve as a sponsor as long as he remains in this area. [Petitioner] has no family, direct family ties, will leave a peer speculative [sic]. Even the letter from the sponsor says he will reunite with a close friend and a roommate. There is no immediate family ties, even the lease where he's supposedly going to with this roommate, close family friend, he's not on the lease, he's never, he's not a co-applicant of the lease. So based on the evidence and the record, the court finds that the respondent's flight risk [sic] and there is no bond amount that will mitigate his risk of flight.

Id.

The court acknowledges that DHS's argument at the bond hearing focused largely on Petitioner's likelihood of success with his newly filed Form I-589, which Petitioner argues is an impermissible basis for denying bond. But where DHS also raised Petitioner's alleged accrual of unlawful status beginning in October 2024 after losing his "F-1 status" and Petitioner's lack of marital or familial ties to the United States, the Immigration Judge had a basis outside of Petitioner's likelihood of success on the pending Form I-589 on which to render her decision. See Unofficial Trans. ECF 2 [Doc. No. 1-5]. The Immigration Judge's oral decision, in which she references Petitioner's lack of "direct" or "immediate family ties" and his living situation, does not readily indicate that Petitioner's Form I-589 was a central factor in the bond decision.[2]

---

[2] To the extent the Immigration Judge did consider "the likelihood that [Petitioner] might obtain relief from removal in assessing [Petitioner's risk] of absconding from future proceedings[,]" Timbigamba v. FCI Berlin, Warden, --- F. Supp. 3d ----, No. 26-cv-281-LM-AJ, 2026 WL 1470320, at *10 (D.N.H. May 26, 2026), she was permitted to do so under BIA precedent, barring "'an unambiguous misstatement of law' in describing the petitioner's prospects of avoiding removal, [which] may fatally infect a flight risk determination." Id. (quoting Kharis v. Sessions, No. 18-cv-04800-JST, 2018 WL 5809432, at *9 (N.D. Cal. Nov. 6, 2018)). Petitioner has not identified any such misstatement here.

As to Petitioner's argument that the Immigration Judge "completely ignored the evidence submitted by the Petitioner[,]" Pet. ¶ 66 [Doc. No. 1], this court may not reweigh the evidence presented to the Immigration Court or direct the manner in which the Immigration Judge, in her discretion, weighs such evidence. See, e.g., Dos Reis v. Vitello, No. 25-10497-RGS, 2025 WL 1043434, at *2 (D. Mass. Apr. 8, 2025) (noncitizen's assertion that Immigration Judge's "cursory finding that he presents a flight risk was based on insufficient (or insufficiently articulated) evidence. . . . is precisely the type of alleged error committed to review by the BIA").

The court is similarly constrained with respect to Petitioner's argument that "the [Immigration Judge] failed to provide . . . Petitioner with a meaningful opportunity to be heard" because "Petitioner's arguments were largely ignored by the [Immigration Judge], in violation of [Petitioner's] opportunity to be heard, under the Due [P]rocess Clause." Pet. ¶ 54 [Doc. No. 1]. The unofficial transcript of the hearing submitted by Petitioner underscores why counsel felt ignored: the entire hearing was less than nine minutes long, and the Immigration Judge asked no questions of Petitioner's counsel and did not engage with any of Petitioner's arguments before rendering her adverse decision. The court is also cognizant that "[f]ederal courts have begun to recognize 'mounting evidence that bond determination hearings conducted in Immigration Court . . . have preordained outcomes.'" Timbigamba, 2026 WL 1470320, at *11 (quoting Singh v. Valdez, No. 1:26-cv-1109-WJM, at *10–11 (D. Colo. Apr. 1, 2026), Dkt. No. 11); see Atariguana-Buele v. Warden, Plymouth Corr. Facility, No. 26-12168-LTS, 2026 WL 1825934, at *2 (D. Mass. June 25, 2026) (citing repeated failures by Immigration Judge Dubuc, who presided over Petitioner's hearing, to adhere to constitutional requirements when conducting bond hearings).

But, although this court may have weighed the evidence differently, the court cannot conclude on the record here that the Immigration Judge's determination that Respondents demonstrated Petitioner's flight risk by a preponderance of the evidence was "so arbitrary that it would offend fundamental tenets of due process." Diaz Ortiz, 384 F. Supp. 3d at 144 (quotation omitted); see Hernandez-Azuaje, 2026 WL 221833, at *1 (district court's review in this context is "highly circumscribed").

### III.    Conclusion

For the foregoing reasons, Petitioner's [Second] Petition for Writ of Habeas Corpus [Doc. No. 1] is DENIED.

IT IS SO ORDERED.

July 13, 2026                                          /s/ Indira Talwani
                                                       United States District Judge

9